## James Huffman, Plff. in Err., *v.* Franklin P. Iams et al., Exrs. etc., of John Huffman, Deceased.

Where the plaintiff sustained to the defendants' testator, at the time the notes in suit were executed by such testator, the relation of son and assignee under an assignment for the benefit of creditors, and trustee for a brother of the plaintiff, the jury were properly instructed that in order to sustain a recovery upon the notes, the burden of proof was upon the plaintiff to satisfy the jury that the notes were fairly obtained, and that in securing their execution the plaintiff made no improper use of the confidence reposed in

NOTE.—For the province of the jury where there is evidence that a conveyance was a gift, see note to Horn v. Buck, 5 Sad. Rep. 480.

The burden of proof is upon the person who alleges a gift from one to whom he stood in a confidential relation, to show that the transaction was fair. Worrall's Appeal, 110 Pa. 349, 1 Atl. 380, 765; Corson's Estate, 137 Pa. 160, 20 Atl. 588; Stewart's Estate, 137 Pa. 175, 20 Atl. 554; Smith v. Loafman, 145 Pa. 628, 23 Atl. 395; Hasel v. Beilstein, 179 Pa. 560, 36 Atl.

him by his father, but that the latter was fully informed of all the facts necessary to enable him to act intelligently; and mere proof that the signatures were genuine was not sufficient; nor was evidence competent that the father during his lifetime was possessed of a large estate, and that he made large gifts to his children, for the purpose of showing that, including the notes, the plaintiff had received from the estate no more than his share.

(Argued October 7, 1887. Decided October 25, 1887.)

October Term, 1887, No. 113, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Greene County brought by the plaintiff below to review a judgment in his favor upon one note only in an action upon three promissory notes. Affirmed.

The facts appear from the following portions of the charge of the court below, INGHRAM, J.:

"In this case the plaintiff, James Huffman, is seeking to recover from Franklin P. Iams and Matthew Garner, executors of the last will and testament of John Huffman, deceased, who was the father of the plaintiff, the amount of three notes. . . . The plaintiff claims that the first note, of October 10, 1878, for $500, was given to him by his father at the date of the note, for the purpose of equalizing the distribution of his property to his children, which he was then contemplating or had been trying to make for some time prior to his death. . . .

"The plaintiff claims that the note of April 3, 1879, for $444.96 was given to him by his father for services, or rather for extra services which the plaintiff claims to have rendered his father while he, the plaintiff, was serving as assignee of his father for the benefit of creditors. . . .

"The consideration of the note of November 29, 1881, the plaintiff claims originated during the time he was acting as one of the assignees of his father. He claims that James Huffman, the brother of John Huffman, deceased, . . . held a note against his father for over $500; . . . and that he ad-

---

336. Ordinarily, a presumption arises that the transfer to the child was fair. Yeakel v. McAtee, 156 Pa. 600, 27 Atl. 277; Simon v. Simon, 163 Pa. 292, 29 Atl. 657; Knowlson v. Fleming, 165 Pa. 10, 30 Atl. 519; Clark v. Clark, 174 Pa. 309, 34 Atl. 610, 619; Hummel v. Kistner, 182 Pa. 216, 37 Atl. 815. But the rule is otherwise where the circumstances point to fraud or undue influence as in HUFFMAN v. IAMS. See also Smith v. Loaf.·lan, 145 Pa. 628, 23 Atl. 395; Darlington's Estate, 147 Pa. 624, 30 Am. St. Rep. 776, 23 Atl. 1046.

vanced from his own means the sum of $400 . . . and that he afterwards took his father's note for that $400 and that that is the consideration of the note of November 29, 1881; and for the amount of these notes he claims a verdict at your hands now.

"[The defendants, while not denying by the evidence that John Huffman signed each of these notes, resist or deny a recovery by the plaintiff upon all of them or upon any of them. The defendants claim that the evidence shows that, on the 23d of March, 1877, John Huffman (becoming involved) was compelled to make an assignment for the benefit of creditors, and that on that day, by deed of assignment, he appointed James Huffman, the plaintiff, and William P. Reese as his assignees. And it is claimed by the defendants that while the proceedings under this assignment were still pending, each and all of these notes were given by the assignor, John Huffman, to James Huffman, his son and one of the assignees. It is claimed by the defendants that that made James Huffman occupy at that time not only the position of son, but also the position of trustee for his father; and that that being true and there being no dispute about the notes having been taken during the pendency of the proceedings under the assignment—the defendant occupying the position of son and trustee toward the maker of the notes,—it is necessary for the plaintiff, before he can recover a verdict at your hands for all or any of these notes, to satisfy the jury from the evidence that the notes were fairly obtained. It is claimed by the defendants that the notes were not fairly obtained by the plaintiff, James Huffman, from his father and assignor, John Huffman. It is claimed that it is the duty of the plaintiff to satisfy the jury by evidence that they were so fairly obtained; and they claim that there is no sufficient evidence offered by the plaintiff to the jury from which they can find that the first two notes—that of October 10, 1878, calling for $500, and that of April 3, 1879, calling for $444.96—it is claimed by the defendants that there is no evidence, or no sufficient evidence, offered by the plaintiff to the jury from which they could find that either of those notes had been fairly obtained by the plaintiff. Under the view we take of the law as applied to the evidence in this case we agree with the defendants' counsel that far, and we instruct you that there is no evidence from which you can find for the plaintiff upon either of those notes, and you will direct your attention to the note of November 29, 1881.] [5] As

we have stated, it is claimed by the plaintiff that that note was given to him for a balance which he had paid to his uncle, James Huffman, on a judgment which he held against his father, John Huffman, who was also his assignor. . . .

"On the part of the defendants it is claimed that the testimony shows that John Huffman, the father of the plaintiff, was bail for the plaintiff to Abner Tharp on a judgment for $900 or $1,000; that the testimony is that John Huffman had to pay that note or judgment; that after the date of this note of November 29, 1881, John Huffman and his son James, the plaintiff in this suit, had a conversation in which John Huffman was asking him about the Tharp judgment which he had been compelled to pay for him, and that in that conversation James Huffman, the plaintiff here, stated for the father not to give himself any trouble about that; that he, his father, had paid it for him, and that he would pay it when he obtained the money, or when he became able, or something to that effect; and it is claimed by the defendants that this testimony goes to show that the note of November 29, 1881, was not fairly obtained from John Huffman.

. . .

"If you should find from the evidence that that note was fairly obtained by the plaintiff in the way he claims to have obtained it, then he would be entitled to a verdict at your hands for the amount of the note with its interest from its date down to the present time. If, on the other hand, you should find that it was not fairly obtained as claimed by the plaintiff, then he would not have a right to recover and your verdict should be for the defendants. [But whatever your verdict may be as to the note of November 29, 1881, the plaintiff would not have a right to recover on the other two notes; and as to them your verdict should be for the defendants."] [6]

The jury rendered a verdict in favor of plaintiff for $543.33, being the amount of the $400 note of November 29, 1881, with interest, and judgment having been entered thereon plaintiff took this writ, specifying the following assignments of error:

1. The court erred in rejecting the following offers of plaintiff:

"We propose to show by the witness (J. J. Huffman) that from March 30, 1877, until the 6th day of February, 1883, or thereabouts, James Huffman, the plaintiff, one of the assignees

for the benefit of creditors of·John Huffman, had almost the exclusive management of the property, real and personal, of John Huffman; that in addition to making sales of real estate and personal property and paying the debts of John Huffman, he carried on farming operations on the home place—had it done—for the purpose of raising money for the payment of the debts of John Huffman: that he did work himself upon the farm, had the management of the farm, the stock, and of the whole assigned estate; that during the first two years after the assignment, or perhaps longer, he lived at the house of John Huffman and did the work and services already spoken of; that this work and management was done with the knowledge and consent of John Huffman and as approved by him; that in said work and management the plaintiff rendered valuable services for the said John Huffman which his share of the commissions set forth in the account failed to pay, for the purpose of showing, in connection with other evidence, a consideration for the note marked Exhibit No. 2, being the note for $444.96, and for the purpose of repelling the allegations of the defendants—the allegations and any evidence of the defendants that the plaintiff performed, for the said John Huffman, no such services."

The defendants object that the evidence is irrelevant and incompetent.

By the Court: The objection is sustained and an exception sealed for the plaintiff.

2. The court erred in rejecting the plaintiff's next offer, which was as follows:

"The plaintiff renews the offer just made, and proposes to prove in addition thereto that the coassignee of John Huffman directed the plaintiff to run the farm and do the work stated in the foregoing offer for the purpose of raising money with which to pay the debts of John Huffman, and that the commissions charged in the account, or the plaintiff's share thereof, were wholly insufficient to compensate the plaintiff for the work and labor which he did for the said John Huffman during a period of near six years; that the commissions charged in the account were only on the money passing through their hands and did not include the services and work upon the farm, this for the purpose of showing and enabling the jury to infer from such evidence that the note in suit for $444.96, marked Exhibit No. 2, was given by the said John Huffman for such labor and serv-

ices on the part of the plaintiff not compensated or paid for by his share of the commissions."

The defendants object to the evidence as irrelevant and incompetent.

By the court: The objection is sustained and an exception sealed for the plaintiff.

3. The court erred in rejecting plaintiff's offer, which was as follows:

"I wish to show by the witness (Wm. P. Reese) that at the time this arrangement was made for paying the judgment of James Huffman, of Washington county, or about that time, the plaintiff spoke of having another note that he had received from his father, for work and labor on the farm, and for his services; this for the purpose of showing that there was such other note, and that the assignees had notice of it before they settled their account and for the further purpose of showing a consideration for the note for $444.96, Exhibit No. 2, this having occurred in the settlement of the business of the estate and in the lifetime of John Huffman."

The defendants object to the evidence as irrelevant and incompetent, being the declarations of the plaintiff not made in the presence of John Huffman.

By the court: The objection is sustained and an exception sealed for the plaintiff.

4. The court erred in rejecting the plaintiff's offer, which was as follows:

"We propose to show by the witness (J. J. Huffman) and by other evidence, that John Huffman during his lifetime was possessed of a large estate in lands and other property; that from time to time he made gifts and advancements of lands, stock, and money, and paid debts to a large amount for his children; this for the purpose of showing that the other children of John Huffman were advanced and received from him property, money, etc., in an amount greater than that given to the plaintiff, James Huffman, and to an amount greater than the debts paid for the plaintiff, including the note for $500 now in suit, for the purpose of showing that the plaintiff has received from the estate of John Huffman no more than his share, and no more than was intended for him by the said John Huffman; and for the further purpose of showing a consideration for the note for $500."

The defendants object to the evidence as irrelevant and incompetent, for the reason that advancements can only be settled in the orphans' court.

By the court: I don't know about that last objection. The first objection is well taken and the objection is sustained, and an exception sealed for the plaintiff.

5. The court erred in that part of the charge to the jury which is inclosed in brackets, designated by the exponent "5."

6. The court erred in that part of the charge to the jury which is inclosed in brackets, designated by the exponent "6."

7. The court, in the charge to the jury, after reading plaintiff's second point as follows: "2d. If the jury finds from the evidence that John Huffman, in the exercise of a capable will and without fraud or duress, sealed and delivered to the plaintiff the note in suit for $500, dated October 10, 1878, then it was a gift of the money mentioned in said note and may be enforced against the said John Huffman or against his estate after his death,"—erred in instructing the jury as follows: "We have already instructed you that there is no evidence that it was obtained fairly, as is claimed upon the part of the plaintiff here; and although we have affirmed this point as it stands, the point is correct if the jury should find the evidence to be as stated; but we have instructed you that there is no evidence from which you could so find."

8. The court erred in its answer to the defendant's third point, which point and answer were as follows:

Point 3. There is no evidence that the notes of October 10, 1878, and of April 3, 1879, were fairly obtained; and therefore your verdict as to said notes should be for the defendants.

*Ans.* Affirmed.

9. The court erred in its answer to the plaintiff's eighth point, which point and answer were as follows:

Point 8. The fiduciary relation existing between the plaintiff and the defendants' intestate, at the time of the giving of the notes in suit, being a trust partaking of the nature of an agency merely, and the plaintiff not setting up the present claims as against the property involved in such assignment in the hands of the trustee or as against creditors for whose benefit the assignment was made, the burden of proof as to want or sufficiency of consideration is not shifted, but is upon the defendant as in any ordinary case.

*Ans.* Refused.

10. The court erred in its answer to the plaintiff's fifth point, which point and answer were as follows:

Point 5. Fraud, when alleged, must be proved; and there being in this case no such evidence of fraud on the part of the plaintiff in the procurement of the notes in suit as can be submitted to the jury, the defendants have failed to show want of consideration for said notes; and, if the jury find that John Huffman signed, sealed, and delivered said notes to the plaintiff in the exercise of a capable will and understanding, then the jury should find that the same are valid and subsisting claims against the estate of the said John Huffman, deceased.

*Ans.* Refused.

11. The court erred in its answer to the plaintiff's third point, which point and answer were as follows:

Point 3. The seals to the notes in suit import a consideration; and the burden is upon the defendants to show by the preponderance of testimony either a want or a failure of consideration therefor.

*Ans.* Refused.

12. The court erred in its answer to the plaintiff's fourth point, which point and answer were as follows:

Point 4. Want of consideration is no defense to a note under seal; and the notes in suit being under seal, the plaintiff is not required, under the evidence in this case, to prove any consideration in addition to that implied from the notes themselves.

*Ans.* Refused.

*P. A. Knox,* for plaintiff in error.—In this state a son is entitled to a return of money loaned to or advanced for his father, to compensation for his services and labor for him after becoming twenty-one years of age, and to gifts and advancements made to him by his father when the rights of creditors are not involved. So is an assignee for benefit of creditors who is a son. Lowrie's Appeal, 1 Grant Cas. 373.

As to the first, second, and third specifications: The court having held that the burden of showing consideration and that the notes were fairly obtained was on the plaintiff, we are unable to see why the testimony relating to the note for $444.96, proposed to be given in the several offers covered by said specifications, was not proper and competent.

As to the fourth specification : As plaintiff claimed that the note for $500 was given to him by his father towards equalizing him with the other children who received advancements, we fail to see why it was not competent to show "that John Huffman during his lifetime was possessed of a large estate in lands and other property; that from time to time he made gifts and advancements of lands, stock, and money, and paid debts to a large amount for his children; for the purpose of showing that the other children of John Huffman were advanced and received from him property, money, etc., in an amount greater than that given to and paid for the plaintiff including the note for $500, for the purpose of showing that the plaintiff had received from the estate of John Huffman no more than his share, of and no more than was intended for him by the said John Huffman; and for the purpose of showing a consideration for said note for $500."

As to the fifth, sixth, seventh, and eighth specifications: These relate to the charge of the court and the answer given to defendants' third point, wherein the jury was instructed that "There is no evidence that the notes of October 10, 1878, and of April 3, 1879, were fairly obtained; and therefore your verdict as to said notes should be for the defendants."

We claim that the court erred in giving the instructions shown by said specifications, and in withholding said two notes from the consideration of the jury.

The facts developed by the evidence admitted amounted to much more than "mere proof that the signatures were genuine," and were sufficient to carry the excluded notes to the jury. The relation of assignee entitled the plaintiff to payment for his services; and it was the province of the jury to determine what particular services the note for $444.96 had been given for, and whether the same had been paid for or not by the commission. Gardner v. Heffley, 49 Pa. 163.

The evidence all tended to repel any presumption of undue influence on part of the plaintiff, arising from the fact that he was the agent, for a time, of his father. "It is always a natural and reasonable presumption that a parent means to treat his children equally." Weaver's Appeal, 63 Pa. 311.

As to the ninth, eleventh, and twelfth specifications: These relate to the burden of proof in a case like the present one. Here there was no fraud, undue influence, weakness of mind, or

ignorance shown. And there should be no presumption of fraud or undue influence where an agent and son takes a note as a gift from his principal when the rights of creditors are not affected.

THOMPSON, J., in Horan v. Weiler, 41 Pa. 472, says: "The cases cited by the defendant in error prove the rule that a breach of law is not to be presumed against anyone, and that the presumption is to the contrary until proof overcomes it (1 Greenl. § 411; 1 Barn. & Ald. 463; 10 East, 216; 19 Johns. 345; 12 Wheat. 69, 6 L. ed. 554); and that he who alleges the contrary must prove it (3 East, 199)."

All dealings between a principal and his agent are surely not to be presumed fraudulent in the absence of any evidence showing fraud. The assignee of an insolvent debtor may purchase the debtor's real estate at a sheriff's sale. Fisk v. Sarber, 6 Watts & S. 18.

A trustee may even purchase trust property at his own sale, at a fair price (Watts's Appeal, 78 Pa. 370); or where the sale is made with the consent of the cestui que trust (Ashhurst's Appeal, 60 Pa. 290; Omaha Hotel Co. v. Wade, 97 U. S. 13, 24 L. ed. 917). He may take a mortgage of trust property to secure a loan to the cestui que trust (Twin-Lick Oil Co. v. Marbury, 91 U. S. 589, 23 L. ed. 329); and buy such property at a sale under the mortgage (Id.).

We might say here as said by the Supreme Court of the United States, at the close of the opinion in Omaha Hotel Co. v. Wade: "Other defenses failing, the suggestion is that the complainants are not bona fide holders of the securities for value; but the suggestion is unsupported by proof, and, of course, cannot prevail, the burden of proof being upon the respondent company. Goodman v. Simonds, 20 How. 343, 15 L. ed. 934; Collins v. Gilbert, 94 U. S. 753, 24 L. ed. 170."

And this was held and said although it appeared that the holders of the said securities had taken them while trustees for the defendant in that case. Prima facie the notes were properly given and were plaintiff's property, and the burden was on the defendants to show that they were not. Arnold v. Macungie Sav. Bank, 71 Pa. 287.

It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only. To be of any avail it must be clearly proved. Mead v. Conroe, 113 Pa. 220, 8 Atl. 374.

As to the tenth specification: A mere reference to plaintiff's fifth point, embraced in this specification, is sufficient, we think, to show that said point is correct in statement, applicable to the facts in this case, and should have been affirmed.

Generally: The notes were taken for proper purposes, were signed, sealed, and delivered by one competent to contract; and, having been acquiesced in and ratified by John Huffman by his acts and conduct from their dates until his death, without even a protest against their payment and allowance, he and those representing him are now estopped from questioning their validity. Watts's Appeal, 78 Pa. 394; Ashhurst's Appeal, 60 Pa. 290.

Acquiescence is presumed from delay; and laches for less than six years, aided by other circumstances, will bar a right. Ashhurst's Appeal, 60 Pa. 290.

John Huffman sanctioned what he did by his subsequent acts and silence. Omaha Hotel Co. v. Wade, 97 U. S. 13, 24 L. ed. 917.

Having had the benefit of the time, labor, services, and money of the plaintiff for which he gave the notes in suit, equity will not now permit his executors to repudiate the obligations given to secure the same. Oil Creek & A. River R. Co. v. Pennsylvania Transp. Co. 83 Pa. 160, 166; Hitchcock v. Galveston, 96 U. S. 351, 24 L. ed. 662; Watts's Appeal, 78 Pa. 394, 395.

*Wyly, Buchanan, & Walton* and *Iams & Barb,* for defendants in error.—The questions involved in the plaintiff's assignments of error are reducible to three: 1. Are notes given by a *cestui que trust* to his trustee, during the existence of the trust relation, to be treated as constructive frauds, and the burden of proof cast upon the trustee that the notes were fairly obtained, that the trustee, in obtaining them, made no improper use of the confidence reposed in him, and that his *cestui que trust* was fully informed when he gave the notes of all the facts necessary to enable him to act intelligently?

2. Was there sufficient evidence adduced upon the trial of the case to warrant the court in submitting to the jury whether the state of facts required by the foregoing rule of law existed at the time either of the notes in controversy was given?

3. Was the evidence contained in plaintiff's offers, and rejected by the court, sufficient within itself, or in conjunction

with the evidence admitted upon trial, to establish the facts required by the foregoing rule of law.

That all the facts contained in our first proposition must be affirmatively proved by the trustee before he can recover against his *cestui que trust* upon notes given during the existence of the trust relation is so abundantly established by the authorities, both English and American, as to render reference to them almost useless. Darlington's Appeal, 86 Pa. 518, 27 Am. Rep. 726, and Miskey's Appeal, 107 Pa. 611.

The same doctrine is recognized and approved in Wistar's Appeal, 54 Pa. 60; Spencer's Appeal, 80 Pa. 317; 2 Wharton, Ev. 1248; Hunter v. Atkins, 3 Myl. & K. 135; and Gibson v. Jeyes, 6 Ves. Jr. 277.

Even though the trust relation had not existed between James Huffman and his father, at the times the notes in suit were given, the relation of son and father, taken with the fact that the father was a very aged man, and the son in the prime of life, would have been sufficient to cast the burden of proof as to the fairness of the transaction upon the son. See Bispham, Eq. 296.

In view of the authorities cited, we submit that the first question must be answered in the affirmative.

We confidently assert that the second question must be answered in the negative.

The facts developed by the admitted evidence amounted to much more than mere proof that the signatures were genuine, and were sufficient to carry the excluded notes to the jury.

We confidently claim that the third question must also be determined in the negative.

Now, we submit that if the plaintiff had succeeded in establishing the state of facts set forth in the first offer, he would have fallen far short of showing a consideration for the note for $444.96; that it was fairly obtained from John Huffman; that in obtaining it James Huffman, the plaintiff, had made no improper use of the confidence reposed in him by his father.

The second offer and purpose are both insufficient to enable the plaintiff to recover upon the note referred to.

The third offer of evidence on the part of the plaintiff was clearly not admissible, because it consisted of the declarations of the plaintiff, not made in the presence of John Huffman or afterwards communicated to him.

The fourth and last offer of evidence on the part of the plaintiff does not tend to establish its alleged purpose. The fact that John Huffman during his lifetime was possessed of a large estate in lands and other property—that from time to time he made gifts and advancements of lands, stock, and money, and paid debts—could not and does not show what the consideration for the $500 note was.

PER CURIAM:

This case is ruled by Darlington's Appeal, 86 Pa. 518, 27 Am. Rep. 726.

There was undoubtedly such a confidential relation between James Huffman and his father, John Huffman, not only as father and son, but as one of the assignees of his father, as threw upon him the burden of proof of showing the consideration of the notes in question; and the court was right in so instructing the jury. Nor can we see in the offers of evidence anything which tended to show such consideration; hence, the court did well in rejecting them. It follows that the third point of the defendants was properly affirmed.

The judgment is affirmed.